Second degree murder; sentence: fifty years' imprisonment.
On the afternoon of September 28, 1978, Florene Gillespie arrived at her home in the Woodlawn section of Birmingham, Alabama. As she exited her automobile in front of her house, she was felled by a gunshot to her left leg. She was taken to a local hospital where her leg was amputated above the knee; however, she died the next day as a result of the gunshot wound.
The appellant was arrested as a suspect in this case on September 30, 1978, his eighteenth birthday. Before a judicial determination had been made to try the appellant as an adult, he was interviewed while incarcerated in the Jefferson County jail by television news reporter Sally Sears of WAPI-TV. During this video taped interview, the appellant confessed his guilt to the murder of Mrs. Gillespie. The appellant's legal counsel was not present during this interview.
The sole issue presented on this appeal concerns whether the extrajudicial confession of the appellant was properly admitted at trial. The appellant in his brief breaks this contention into two parts: (1) whether "a statement made by a child, while in custody and without counsel, is inadmissible pursuant to § 12-15-67, Code of Alabama 1975;" and (2) whether the failure to advise the appellant of his constitutional rights under Mirandav. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before the interview vitiates the confession.
Code § 12-15-67 provides:
 "Unless advised by counsel, the statements of a child or other information or evidence derived directly or indirectly from such statements made while in custody to police or law enforcement officers or made to the prosecutor or probation officer during the process of the case, including statements made during a preliminary inquiry, predisposition study, informal adjustment or consent decree, shall not be used prior to a determination of the petition's allegations in a delinquency or in need of supervision case or in a criminal proceeding prior to conviction."
See also Rule 21, Alabama Rules of Juvenile Procedure. The appellant comes within the definition of "child" as set out in Code § 12-15-1 (3)(b).
Section 12-15-67 and Rule 21, supra, "provide that statements made by a child to law enforcement authorities are inadmissible unless the child is advised by counsel." (Emphasis added.)Carpenter v. State, Ala., 378 So.2d 730 (1979). The principles of Miranda apply only to confessions made to law enforcement officers or their agents. Truex v. State, 282 Ala. 191,210 So.2d 424 (1968). Therefore, the determinative question in both contentions of the appellant is whether reporter Sally Sears was an agent of law enforcement authorities. In reaching this determination, we must look to the circumstances surrounding the giving of the confession. Allen v. *Page 553 State, 53 Ala. App. 66, 297 So.2d 391, cert. denied, 292 Ala. 707, 297 So.2d 399 (1974). See also Lippold v. State, Ala.Cr.App., 365 So.2d 1015 (1978), cert. denied, Ala.,365 So.2d 1022 (1979).
In the instant case an extensive voir dire examination revealed the following: Sally Sears interviewed the appellant at the Jefferson County jail on November 11, 1978.[1] This was the third interview of juveniles that Ms. Sears had conducted for a series of stories she was doing on juvenile justice. She specifically selected the appellant for an interview because of the nature of the charge against him. She was familiar with the name of the appellant because of a recent "break-out" and two robberies of which he was accused. Someone in the Family Court had first told her the appellant's name and later Lionel Bragan, warden of the Jefferson County jail, also gave her his name.
Ms. Sears received clearance to interview the appellant from the jail warden; however, she said no one from the district attorney's office or any police officer instructed her to interview the appellant.
The following portion of the interview was played on video tape for the trial court:
 "Q. Do you think that you were getting the kind of legal help that you need?
 "A. Which I would admit that I did the murder but, you know, I wasn't shooting at the lady, but I still did it so, you know, I had to do the time for it. But something I ain't done I ain't got no business doing the time for it."
The answer was not responsive to the question. Ms. Sears testified her purpose was not to extract a confession from the appellant. Her question was certainly not phrased to elicit an incriminating statement from the appellant. She was merely asking if he was satisfied with his legal counsel.
Ms. Sears did not approach law enforcement authorities to reveal the contents of the interview. She was contacted by a member of the district attorney's office after the interview was shown on television. She said the caller, whose name she did not recall, "recognized from the circumstances who the person was" that she had interviewed and said she would be subpoenaed.[2] She first disclosed the identity of the appellant during direct examination in Family Court on December 4, 1978, after answering the subpoena.
The appellant testified that on the day of the interview the guards in his cell block told him to "go walk and talk." This meant to the appellant to "go talk to my lawyer." When he reached the interview area, he saw Sally Sears and an unidentified male (television cameraman). The appellant knew that neither was his attorney.
Ms. Sears introduced herself to the appellant and asked him into the interview room for the purpose of interviewing him about juveniles. The appellant had been previously advised by his attorney not to talk with anyone but the attorney or the appellant's mother. The appellant stated he disregarded this advice because "at the time I thought I did it [committed the crime]," and he felt like he had no choice. The appellant testified that no one made any promise or threats to induce him to participate in the interview.
In summary we find the following factors:
(1) Ms. Sears was pursuing a legitimate news story.
(2) Ms. Sears did not voluntarily reveal the appellant's identity.
(3) The appellant was not coerced into the interview.
(4) The appellant disregarded the advice of his lawyer in granting the interview.
(5) The appellant's confession was a spontaneous statement that was not responsive to the question.
(6) The purpose of the interview was not to extract a confession.
Our review of the circumstances convinces us that the trial court was correct in *Page 554 
finding that Ms. Sears was not so connected with law enforcement authorities as to be an agent for them. The appellant's inculpatory statement was not rendered inadmissible by Code § 12-15-67 nor Rule 21, ARJP. It was not made to law enforcement officers or to their agent. Carpenter, supra. The confession was likewise not rendered inadmissible pursuant toMiranda for the same reasons. Truex, supra. Although not argued in appellant's brief, we find the Sixth Amendment inapplicable. Neither Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199,12 L.Ed.2d 246 (1964), nor United States v. Henry,447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), applies to the instant case because law enforcement agents here did not deliberately elicit statements from the accused in the absence of counsel nor intentionally create a situation likely to induce incriminating statements without the assistance of counsel.
AFFIRMED.
All the Judges concur.
[1] Interviewed simultaneously with the appellant was another inmate, Eddie Merritt.
[2] The identity of appellant was not revealed, and his face was not shown during the television interview.