McMILLAN, Judge.
This appeal follows a conviction of manslaughter and a sentence of ten years’ imprisonment. For the reasons outlined below, the conviction is hereby affirmed.
On February 22, 1984, the body of John Timpa was discovered. He had been shot twice by a .30-30 rifle. Later that day, in the course of his investigation, Sgt. Harris, of the Jefferson County Sheriffs Department, talked to the appellant after finding appellant’s name and phone number in Tim-pa’s clothing. Appellant denied knowing Timpa, and Officer Harris told appellant that he would be in contact with him. On February 24, 1984, the appellant telephoned Sgt. Harris to ask if he could leave town for a day or so. Sgt. Harris indicated that it would be all right for him to leave and that he would contact him if necessary. On February 26, 1984, Sgt. Harris asked the appellant to come to the police station for questioning; no threats or promises were made. When appellant stated that he owned a .30-30 rifle and that he did in fact know the deceased and had slept with him, the officers stopped the interview and advised the appellant of his Miranda rights. The appellant contends that these pre-M-randa statements were elicited during a custodial investigation and, thus, that he had been deprived of his constitutional rights.
The safeguards provided by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), apply only when an individual is subjected to “custodial” interrogation. Primm v. State, 473 So.2d 1149 (Ala.Cr.App.1985); Warrick v. State, 460 So.2d 320 (Ala.Cr.App.1984). The appellant *1028 contends that he was in custody because the investigation had “focused” on him when he made the incriminating statements. However, as this court has stated, per Judge Bowen, “It is custody and not investigative focus or suspicion which marks the point at which the warnings required by Miranda v. Arizona [citation omitted] become mandatory. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); Harris v. State, 376 So.2d 773, 774 (Ala.Cr.App.), cert. denied, 376 So.2d 778 (Ala.1979).” Clisby v. State, 456 So.2d 86, 89 (Ala.Cr.App.1982), affirmed in part, reversed in part, 456 So.2d 95 (Ala.1983). Therefore, the determining factor is whether the appellant was in custody when he made the statements. Custodial interrogation has been defined as “ ‘questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ [Citations omitted.]” McWilliams v. State, 476 So.2d 1244 (Ala.Cr.App.1985), at 1246. The United States Supreme Court has established a guideline for inquiring, on a case-by-case basis, whether a suspect is in custody; however, the ultimate question “ ‘is simply whether there is a “formal arrest or restraint on freedom of movement” of the degree associated with a formal arrest.’ California v. Beheler, [463 U.S. 1121 at 1125, 103 S.Ct. 3517 at 3520, 77 L.Ed.2d 1275 (1983)]” Primm, supra, at 1158. Further, the criteria for courts to use in determining whether Miranda warnings were necessary include: “(1) probable cause to arrest, (2) subjective intent of the police, (3) subjective belief of the accused, and (4) focus of the investigation.” Warrick v. State, 460 So.2d 320 (Ala.Cr.App.1984), citing United States v. Montos, 421 F.2d 215 (5th Cir.1970), cert. denied, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970).
As to the subjective intent of the police, Sgt. Hill maintains that his intent was to conduct further investigation. Moreover, this court has stated that “Miranda warnings are not required simply because the police may suspect the one being questioned.” Primm, supra, at 1158. Further, it is not determinative that the police initiated and arranged for the conversation. Primm, supra, at 1158. An “undisclosed intent to arrest cannot transform a non-custodial situation into a custodial one.” Harris v. State, 376 So.2d 773, 777 (Ala.Cr.App.), cert. denied, 376 So.2d 778 (Ala.1979). The appellant’s intent should be adjudged under the “reasonable man” standard; that is, “whether a reasonable man would feel that he was physically deprived of freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action is restricted by such interrogation.” Warrick, supra, at 322. Further, as this court stated in Harris, supra, at 776, “the subjective beliefs of the defendant are not to be the determining factor in deciding this issue” — i.e., whether or not the individual was in custody.
Before the appellant made the incriminating statement, he was told by Sgt. Harris that he could go out of town overnight, and no threats were made to him when he was asked to come to the station for questioning. The facts here are easily distinguishable from those of Harrison v. State, 358 So.2d 759 (Ala.Cr.App.1977), cited by appellant, in which the appellant was “accosted” by the arresting officer and ordered to fall to the ground on his hands and knees before being interrogated. Finally, in Harris, supra, at 777, where “[t]he investigation had focused on the defendant to the extent that he was the only suspect the investigating officers had at that time,” this court found that “focus in and of itself is not the determinative question in determining the existence of custody.” (Citation omitted.)
This court has heard a case similar to the one at bar, Clisby v. State, 456 So.2d 86 (Ala.Cr.App.1982), affirmed in part, reversed in part, 456 So.2d 95 (Ala.1983), wherein the appellant was being questioned in order to resolve some discrepancies concerning his activities during the day of the homicide. In Clisby, the questioning was stopped when the appellant asked what *1029 would be the consequence if he decided to confess. Before the appellant’s inquiry as to his pending fate, he was free to leave “[e]ven if the investigation had begun to focus on the defendant as he allege[d].” Clisby, supra, at 89.
The appellant was not in custody when he made the two incriminating statements. He was questioned in the course of ordinary investigation. When his involvement in the crime was revealed by his statements, questioning was immediately stopped and he was advised of his constitutional rights.
AFFIRMED.
All the Judges concur.